The next case is Saha Thai Steel Pipe v. United States & Wheatland Tube Company, No. 22-1175. Ms. Drake, when you're ready. Good morning, Your Honors. May I please support Elizabeth Drake on behalf of defendant appellant Wheatland Tube Company. This court in Hyundai Steel ruled that the U.S. Department of Commerce may not adjust a respondent's cost reduction to account for a cost-based particular market situation when commerce is performing the sales below cost test on home market sales. But in reaching this conclusion, the court emphasized that its interpretation of the statute would not lead to absurd results. In particular, the court rejected appellant's claims that this interpretation would require commerce to include home market prices in normal value even though those prices only pass the sales below cost test due to the fact that the costs were distorted by the PMS and there was no adjustment for the PMS. Instead, the court explained that commerce is not powerless to address home market sales that are affected by a PMS yet still pass the sales below cost test. The court pointed specifically to section 1677 B.A. 1 stating that it, quote, specifically gives commerce the tools to ensure a proper comparison with the export price. This is the exact same provision that commerce invoked in the first remand results below in this case to find that absent the adjustment in the sales below cost test, the Commerce Department was precluded from performing a meaningful sales below cost test and meeting the goals of the sales below cost test, which is to determine that home market sales are actually in the ordinary course of trade. Deprived of the tool in the sales below cost test, commerce instead relied on provisions in the normal value statute that state, first, that home market sales must be in the ordinary course of trade and, second, that the ordinary course of trade is defined as excluding those situations in which a particular market situation prevents a proper comparison with export price. Commerce, looking at these two provisions together, one in the normal value statute saying home market prices need to be in the ordinary course of trade, one in the definition section defining the ordinary course of trade as excluding situations affected by a PMS, then said, well, if we can't rely on home market prices under paragraph A4 of the normal value statute, we are allowed to go directly to constructed value for normal value. And that's what commerce did in the first remand results here. Unfortunately, the court below, when it was reviewing commerce's first remand results, did not have the benefit of this court's opinion in Hyundai Steel due to a lag in timing. What adjustment did commerce make, though, in those first remand determinations? In the first remand determination, commerce based normal value on constructed value, a buildup of the cost of production plus an amount for profit. And in doing that, because it was using constructed value, it was instructed by paragraph E of section 1677B, which explains how commerce is to calculate constructed value. And it was that section that was amended by Congress to say that where commerce finds that a PMS distorts respondents' costs, they may use any other methodology. So the other methodology that commerce used was to make an adjustment to sanitize steel costs, hot-rod coil costs, to account for the fact, first, that the U.S. government had found... Yeah, isn't your problem that they really just re-described a way of doing something that we said they couldn't do in Hyundai Steel, which is change, alter the cost of production in determining normal value. They just tried to push it to a later phase, but that still seems to me to be impermissible under Hyundai. So under Hyundai... Did they make the requisite... Sorry, I didn't mean to cut you off. As I understand it, you first look at normal value, and you look at the home market sales, and see if there's any of them sufficient so you can use that, and that's the preferred method. Yes. And so here, they looked at them, there were certainly ones that met the criteria for using normal value, right? Well, no, because what commerce found was that those home market sales were not in the ordinary course of trade. So there's several different thresholds that have to be met in order for home market prices to be a reasonable basis of normal value. And one of those thresholds is that those home market sales need to be in the ordinary course of trade. And in defining the ordinary course of trade in 1677.15c, Congress said situations in which a PMS prevents a proper comparison are not in the ordinary course of trade. And so what commerce found is that it could not rely on those home market prices, because doing so would prevent a proper comparison, and therefore it would be relying on sales that are not in the ordinary course of trade, which is prohibited under the statute. And Hyundai Steel was very importantly differentiated the cost of production provisions of the statute, which are used in the sales law class. Generally, putting aside the fact that if you find that you can't use normal value for whatever reason, when you go out to constructive value, when you're looking for how you put together constructive value, where do you get the cost of inputs in a constructive value situation normally? Don't you look at third-party sales and things like that, rather than just adjust the cost of the input in the home market sale? Normally, you use the respondent's costs. There may be some elements that are missing that need to be added. But 1677E, after it lays out the normal method for calculating constructive value, says where PMS affects those costs. Commerce may use, quote, any other methodology. I get that, but the question really for me is, if we've already said you can't adjust this factor of production under this one subsection, why we would say that you can just get it in by re-describing it in a certain way, rather than just do a different kind of constructive value? I think this is hard, because it does seem like there's a potential for an issue here that's not captured, but I'm not sure how we can do that without conflicting with Hyundai Steel, because it really is the same adjustment, basically, isn't it? The difference, Your Honor, is that the adjustment issue in Hyundai Steel was under Paragraph B, which was not amended by Congress to allow for any other methodology, whereas the adjustment that Commerce made here in the first remand was under Paragraph E that was amended by Congress to allow Commerce to use any other methodology. And it was specifically that distinction, the amendment of one paragraph but not the other, that the court relied upon in Hyundai Steel to say this adjustment is not permitted under Paragraph B. That was the issue there, but it's still the same type of adjustment. Commerce is just trying to get it in under a different statutory section, and I notice Commerce—I mean, I'm not reading into it, but Commerce is not here to defend that, or I guess on your side to argue for that interpretation. But the reason that the court disallowed the adjustment under Hyundai Steel was not just because it opposes any such adjustments. It was because that section of the statute didn't authorize the adjustment. This section of the statute does. So I guess the question for us is even if it—and just assume this is correct. I think it is, but if it's not, you can tell me. But if it's the same adjustment that Commerce tried under the earlier subsection that they can't do under B, if they're just trying to recharacterize it and say, well, we can get it in under that section. We need to resolve as a matter of law whether that's consistent with Hyundai or not. And it seems to me that there's a little bit of wiggle room there but not much for your side because what we've said is you've got to use these normal value sales, and you can't adjust the cost of production in that. So if the only thing that's making these below market—or, sorry, not in the ordinary, of course, but trade is that, then why is that permissible to adjust later? Sorry, that was convoluted. I think I understand, Your Honor. So it is permissible to adjust later because, as I said, that specific section of the statute does authorize any other calculation methodology, including these adjustments, and also because Commerce undertook the additional analysis to determine that the inability to account for the PMS and the sales below cost test made home market sales unreliable and outside of— Let me ask it a little bit a different way. If we've determined that methodology is impermissible, then how is—even if it's under Commerce's—any other permissible methodology under the other subsection— I can't give you the full numbers, but we know what we're talking about, hopefully. Why is it a permissible methodology when we've already said that type of adjustment is not permitted by Congress? Because Hyundai Steel's ruling was limited to paragraph B that has no language about any other calculation methodology and was specifically contrasted with E, which does permit any other calculation methodology. So there's no tension with Hyundai Steel. In fact, once the court in Hyundai Steel was considering whether or not its ruling about the plain meaning of B would lead to absurd results, no, because Commerce does still have power to address the PMS. Here's my problem is it's not just—I mean, and the case says what it says. My understanding of that language was you have other tools available, but Commerce is not using another tool. It's using the same tool under a different subsection, and that seems to me problematic. Why didn't—if Commerce really thinks this is a problem, why don't they go out and say, well, we can't use the normal value cost for that because it's not an ordinary course of trade and go out and get third-party evidence and say, here's what that product costs in the ordinary course of trade, and we're going to use that cost in the constructive value? Commerce could have done that under the very broad language of any other methodology. And that's usually what they do in constructive value, isn't it? That's often what they—especially in non-market economy cases where they're building up the value in that method. But here it wasn't the nature of the adjustment itself that the court objected to in Hyundai Steel. It was the fact that that part of the statute did not authorize any kind of adjustment, even the latter type of adjustment just identified by Your Honor. And so once Commerce was now operating under constructive value, under paragraph E, where it is allowed to make any other type of adjustments, this adjustment was authorized. And we believe that Commerce provided the analysis required to explain why it had to rely on constructive value given the inability to use the sales flow cost test. Can I ask, on that—that may be a factual point, but what confused me, among other things, is the PMS here, is there any evidence that it affected the home market price or value any differently than the export price? Because it seems at least the CIT thought, presumptively at least, it would impact both the same. So how could that make a proper comparison difficult? What's the record on that? Thank you, Your Honor. There is no specific record that there's any asymmetry in how the Harvold Steel cost affected home market prices versus export prices. And respectfully, we explain in our reply brief why such a showing is not required, because the anti-dumping statute doesn't just require symmetry. It actually holds normal values to a higher standard. Normal values, whether they're based on prices or costs, have to be in the ordinary course of trade. Export prices don't. There's no requirement that export prices are in the ordinary course of trade. So, for example, when eliminating home market prices that are below cost, that only happens on the normal value side. Export prices can be below cost, and there's no adjustment whatsoever. So the lack—it sounds like you're acknowledging there's a lack of evidence of an asymmetric impact, but you say we didn't have any burden to show an asymmetric impact. I believe there was a quote from Hoos Steel that was cited in a footnote to Hyundai Steel— excuse me, they're all steel cases—assuming that some sort of asymmetry would be required. And respectfully, I don't believe that any asymmetry is required, because there are many instances where the statute requires normal values to meet a higher standard. Did you have a burden at Commerce to show that there was at least a PMS? Yes. And is that—whether you met that burden or not—is that disputed any longer in this case? The court below never reached the substantial evidence issue as to whether or not our PMS allegation— Is that something that would have to be reached if you prevail on the legal question in front of us? Yes. So you can't just win. The other side has a chance still to challenge that. Unless the court wanted to resolve that issue. But, no, the substantial evidence issue was brief, but never decided. Okay. Thank you. Thank you very much. Mr. Durden. Good morning. May it please the Court, I'm James Durden here for Sahatai. Let me join the conversation. I think the discussion so far reflects that the Court understands the issues here, so I think I can be very brief and just sort of summarize where we stand. First, the Court correctly recognized that it's exactly the same adjustment. In fact, Commerce went out of its way repeatedly in its remand determination to stress, we haven't changed anything. It's still a cost PMS. We're not going to a price PMS. And when they actually made the adjustment, it was exactly the same adjustment they'd made previously. So the only thing that changed in the remand determination was the legal box they tried to squeeze it into. But as the discussion just a few minutes ago indicates, in fact, the statute is very specific on what is allowed and what is not allowed. Commerce did not meet the standard for invoking the provision they're now trying to rely upon. They claim repeatedly, paraphrasing the statute, that they basically found that there was not a proper comparison of price. But other than paraphrasing the statute, they repeatedly came back to the same single explanation, the cost is too low. That's the only explanation they provided. Well, the cost being too low is symmetrical, and that's been discussed repeatedly in the Court decisions. In fact, in Hyundai, in footnote 11, this Court favorably cited that point made by the trade court in that particular case. It's equally applicable here. But the key point, Your Honors, is the statutory hook Commerce tried to rely upon here can't be met with what Commerce did in the remand. Proper comparison of cost, ordinary course of trade. But look at the other words in those statutory provisions. Nothing in that language suggests that it's a hook for making an adjustment because of improper costs that are too low. What's the typical way when Commerce determines sales are not in the ordinary course of trade, and so therefore they're not qualified for normal value and goes to constructive value? What findings do they make? Well, the main thing is they're examining the prices and the way in which they're sold. Ordinary course of trade is part of that price provision of the statute, and that's where Commerce completely dropped the ball in this remand because they made no effort to do that. Now, in fairness, Commerce had been presented below with a cost PMS, but Commerce seemed to think they could just kind of change the box, and that isn't sufficient. Yeah, no, I understand that. But hypothetically, if Commerce had done the proper, in your view, price comparison and determined that these sales don't qualify for normal value because they're not in the ordinary course of trade, and so when they go to constructive value and assume that's right, can they then make this adjustment to cost for constructive value once they've made a proper ordinary course of trade? Or do they have to do what I think is the normal thing of look, find, you know, other sales from third-party sales or something? I guess I'm just asking. The question is it does seem to me that it's either a hole in the statute that Commerce needs to fix or Commerce needs to, you know, find some other way. If the cost of production are somehow unfairly subsidized or below market or something, you know, clearly we said you can't adjust that during normal value. Is there a way to get at that in a constructive value determination? Well, Your Honor, the statute is what Congress gave us. In this area of law, the framework Congress gives us is not always kind of a model of perfect clarity. But as the trade court, I think, correctly emphasized, sequence matters. The statute provides a very specific sequence and order. If you aren't happy with home market sales, you need to go through the statutorily prescribed steps of considering other alternatives. If you eventually land in constructive value, then there is specific authority in the statute to make an adjustment for costs that are too low. But you have to get there by following the proper procedures. You can't just jump there at the very end. Is your point that it's not necessarily the actual adjustment made here but the problem is they did not make the specific findings necessary to kick this into constructive value at all? Well, first, that they didn't make the specific findings necessary. The findings that this court in Hyundai made very clear in footnote 10 are different. Footnote 10, I think very prophetically, drew a very sharp distinction between the nature of the allegation for not proper comparison of price and the nature of the allegation if it's below cost, the costs are too low. So footnote 10 is very important. They did not do that, and they did not follow the proper procedure of if there's a problem with home market price, do you consider the other alternatives? Do you go through the proper steps? And that was something that the trade court stressed, we think, quite correctly. So we've talked about the narrow statutory authority, which doesn't give commerce the authority that they claimed here. We talked about the fact that commerce is basically just recycling exactly the same adjustment. To be honest, the only thing we're left with is this kind of argument about the asymmetry. In our view, the symmetry is important because that's the statutory provision we're looking at. We're looking at a provision that talks about making a proper comparison. It may be true that there are other areas of the dumping law where the statute specifically says you can do something that results in asymmetry, but the statute makes that clear when it's allowed. Here we have statutory language on its face that talks about making a proper comparison, and our position is that language does not allow its invocation for an input cost PMS. If it's a different kind of PMS, we might have a different case. If commerce chose on remand to undertake a different analysis, it would be a different case. But this case, the one that's before you now, is commerce basically taking exactly the same set of conclusions, trying to put it in a new legal box and get around this court's decision in Hyundai, which we submit is not permissible and it's not consistent with the statute. Is your authority for requiring an asymmetric impact of the PMS, is it just the proper comparison language in the statute or is that an issue that's been addressed elsewhere? It's our position that's the proper interpretation of proper comparison, and we know that it has been favorably invoked in numerous trade court decisions and this court's decision in Hyundai in footnote 11. But we think that is the proper reading of that statutory language. And your arguments may already address this, but I want to make sure I understand. So, for instance, at page 26 of the blue brief, they say, nothing in the language of the statute itself limits commerce's ability to take distorted costs into account when determining whether home market prices are in the ordinary course of trade under sections 1677.15 and 1677.BA1.BI. Is it correct? And if that's incorrect, tell me what in the language of the statute itself limits commerce's ability to do that. It is not correct. The reason it is not correct is the provision you cited. Their hook, ordinary course of trade, specifically uses the statutory terms, and I'm quoting here, price, which is not cost. It reinforces the use of the word price with the word sold. You can sell something, but you can't sell a cost. Nothing in the definition of ordinary course of trade, 1677.15, changes that, because 1677.15, the focus is on what has been normal in the trade. You trade goods at prices. You don't trade costs. And the statute specifically also uses the phrase sales and transactions. So, in multiple places, the statute makes very clear that when that is the hook, when it's a home market sales aren't right hook, it has to be based on something wrong with the sales. And Congress has not given commerce the authority to take a cost problem and stick it in this provision that is explicitly limited to dealing with sales problems. In the particular PMS language here, same thing. Proper comparison, proper comparison of sales of prices, not proper comparison of costs. So, their argument is essentially, if I were to summarize it, if I'm summarizing it correctly, I'm sure my colleague will correct me. They're trying to make the word situation do way too much duty. They read situation out of the statute as if it's carte blanche to do anything, because a situation could be anything. But situation doesn't exist in isolation. Situation is part of this broader statutory language, which makes it very clear it's about sales and prices, not about cost problems. If the court has no further questions, I've concluded my argument. Thank you. Ms. Drake, I'll give you three minutes for rebuttal. Thank you very much, Your Honor. I'd like to begin where Mr. Durling just left off and say that 167715C is explicitly not limited to just sales prices. The chapeau says sales and transactions among others. The first paragraph, A, is about sales disregarded because they're below cost. That involves both sales and cost. Paragraph B is about transactions that are disregarded because they're between affiliated parties. Paragraph C, Congress specifically chose the word situations, not sales, not prices, but situations where PMS prevents a proper comparison. And I believe Congress was authorized to interpret the word situations to encompass the situation it was facing here, where it could not perform a meaningful sales below cost test because the costs were so distorted by PMS, and therefore it couldn't determine that home market prices were actually in the ordinary course of trade. What about the argument that references to price and sold and trade all relate not to cost? Right. Well, in the – excuse me, Your Honor, let me bring that up right here. The price at which the foreign-like product is sold in exporting country in the usual commercial quantities and in the ordinary course of trade. So then Congress looks to the definition of ordinary course of trade, and situations in which it's not possible to make a proper comparison are outside the ordinary course of trade. And so that situation encompasses both the home market sales prices and the costs that were incurred to make those sales. Do we have any cases yet where we've had to construe what situation means and how broad it is in this statute? In this specific section, no, Your Honor, I don't believe that you have construed that term. And the same with the term proper comparison. I believe it would be far too narrow to say that that only allows a finding of a PMS where there is asymmetry. Proper and symmetrical are not the same. There are many reasons a comparison might be improper, and here Congress found that a comparison based on home market prices would be improper because there was no way to test whether or not those sales were actually in the ordinary course of trade, given the large distortions to response costs in this case. And I believe pages 20 through 22 of Congress's remand determination are especially helpful in explaining just how large the impact of these distortions was in this particular case, and therefore why not taking those distortions into account would prevent a proper comparison. Thank you. Thank you.